**STATE of Missouri, Plaintiff-Respondent,**

v.

**Vincent L. LOMAX, Defendant-Appellant.**

**No. 12305.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 25, 1982.

John D. Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David Robards, Public Defender, Joplin, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Vincent L. Lomax, was jury-tried and convicted of forgery in violation of § 570.090, V.A.M.S.1978, and thereafter sentenced to two years' imprisonment for the crime. This appeal followed. We affirm.

The basic facts of the case are as follows. The forgery information charged that defendant "with the purpose to defraud, possessed for the purpose of using as genuine a check and at that time knew this check had been made so that it purported to have a genuiness [sic] which it did not possess." The charge conformed to the language of the statute. Evidence to prove the charge

that was introduced at trial was that two pads of blank checks were stolen from the office of Charles Sweatt in Joplin, Missouri. One pad of checks was for withdrawals from Sweatt's account in the Commerce Bank of Joplin, while the other was for withdrawals from an account Sweatt had in a bank in Taos, New Mexico.

Shortly thereafter, defendant opened an account in Joplin with a financial institution known as First Security Savings and Loan in the name of Michael Neal. In a period of approximately one month, defendant deposited nine of the checks stolen from Sweatt in this account. Some of the checks were drawn on the Commerce Bank account, while others were drawn on the Taos, New Mexico account. The checks were made in varying amounts, totalling more than $3,000, purportedly signed by Mr. Sweatt, and were made payable to cash, Mike Neal, or Michael Neal. Sweatt had not signed the checks in question and had not given any other person the authority to sign them for him. Sweatt did not know defendant and had never written any checks made payable to him.

Defendant made frequent cash withdrawals from the account, many of which were made at the time of the deposit of a check. While defendant was in the process of depositing a 10th check, made payable to cash in the amount of $308.20, and purportedly signed by Sweatt, he was arrested by Joplin, Missouri police officers. Defendant had requested the bank officer who was handling the transaction to deposit $8.20 in the Michael Neal account and give him the balance of $300 in cash. The bank officer deposited the $8.20 as requested, but asked defendant to show him a driver's license as identification before he gave Lomax the $300 in cash. When defendant could not produce any identification as Michael Neal, the bank officer called the police, who came to the scene and arrested defendant.

At trial, three bank employees identified defendant as the person who had deposited some of the checks in question in the Michael Neal account. Defendant testified at trial. He said that he had received the ten checks from a person he knew as Stephen Lane, and that the checks were in payment of a gambling debt that Lane owed him. On cross-examination, he said he later learned that this person was not named "Lane" and defendant did not know where the person was who gave him the checks. Defendant admitted opening the account in question in the name of Michael Neal, admitted endorsing the checks, and admitted making cash withdrawals from the account. Defendant testified that he had used the name of Michael Neal in the transactions in question, as he had identification in that name. He offered no plausible explanation as to why he did not use his real name in opening the account.

At the close of the evidence, the court gave the jury certain written instructions, among which was instruction No. 5, which reads as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on August 29, 1980 in the County of Jasper, State of Missouri, the defendant used as genuine a check in the amount of $308.20, and

Second, that the defendant knew that this writing had been made so that it purported to have a genuineness which it did not possess, and

Third, that the defendant so acted with the purpose to defraud, then you will find the defendant guilty of forgery.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of forgery, you will assess and declare the punishment at:

1. Imprisonment in the division of corrections for a term of years fixed by you, but not less than two years and not to exceed seven years, or

2. Imprisonment in the county jail for a term fixed by you, but not to exceed one year."

After deliberation, the jury found defendant guilty of forgery as submitted in in-

struction No. 5, and recommended punishment, which the court assessed.

■ Defendant's first point of claimed error is that there was a fatal variance between the crime charged in the information and findings required of the jury in the verdict director instruction No. 5, as the information charged that the defendant "possessed for the purpose of using as genuine" a certain check, while the verdict directing instruction required the jury to find that the defendant "used as genuine" the check in question.

■ In order for a variance between the information and the verdict directing instruction, as to the description of the crime committed, to be fatal, it must be material and prejudicial to the rights of the accused. *State v. Crossman*, 464 S.W.2d 36, 42 (Mo. 1971). In this case, the evidence showed both possession for the purpose of using as genuine, and used as genuine of the forged check in question by defendant. The undisputed evidence was that defendant personally presented the forged check, the 10th of a series of similar transactions, to an official at First Security Savings and Loan, and asked that a small portion of the proceeds be deposited in his account, which he maintained under a fictitious name, and that the balance be given to him in cash.

His defense was that he had, in good faith, received the check from another person in payment of a gambling debt. This defense, if the jury had believed it, would have been equally applicable to a submission of "possession" of the check as to a submission of "use" of the check. The state's evidence supported a submission on either possession or use. There is nothing in the record to show how defendant was prejudiced by the variance in question, or to show that the variance was material. The point is denied.

■ Defendant's two remaining points of claimed error are that there was insufficient evidence introduced by the state "from which a jury could find that the defendant used the $308.20 check as genuine" and defendant knew "that the check in

question was in some way not genuine." A review of the trial transcript indicates that there was sufficient evidence presented to the jury, much of which is outlined in this opinion, to prove beyond a reasonable doubt that defendant was guilty of forgery as charged and as submitted to the jury. See *State v. Washington*, 570 S.W.2d 838 (Mo. App.1978).

The judgment and sentence of the trial court is affirmed.

All concur.